IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELVIRA BITSOI,

        Plaintiff,

  vs.                                                          Civ. No.  21-0180 JCH-JHR

DEB HAALAND, Secretary,
U.S. DEPARTMENT OF THE INTERIOR,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      On March 4, 2022, Defendant Deb Haaland, Secretary of the United States Department of the Interior, filed a *Motion for Summary Judgment* (ECF No. 31), seeking judgment on Plaintiff's claims for retaliation and race, color, and age discrimination. Plaintiff filed a response contesting the motion. Having considered the motion, briefs, evidence, and law, the Court concludes that Defendant's motion should be granted, and judgment will be entered in favor of Defendant on all counts.

**I.    FACTUAL BACKGROUND**

      Plaintiff Elvira Bitsoi ("Plaintiff" or "Bitsoi") is a Navajo Native American woman with brown skin tone who was born in 1963. (Def.'s Undisputed Fact ("UF") ¶ 2, ECF No. 31.)[1] The Bureau of Indian Education ("BIE") hired Plaintiff as an Education Program Specialist, GS 13, Step 1, effective December 2016, subject to completion of a one-year probationary period. (Def.'s UF ¶ 1.) The position required implementing, developing, coordinating, and evaluating the curriculum and instruction of Language and Culture programs, and establishing and maintaining

---

[1] The Court finds as "Undisputed Facts" those facts that Defendant set forth in her motion (ECF No. 31), to which Plaintiff either admitted in her response (ECF No. 37) or failed to dispute with evidentiary support.

collaborative and cooperative working relationships with various entities inside and outside the BIE. (Def.'s UF ¶ 3.) BIE had employees of many different tribes, including Navajo. (Def.'s UF ¶ 38.)

Charlotte Garcia, a Native American and member of the Acoma Pueblo, was an Education Program Administrator and Plaintiff's first-level supervisor. (Def.'s UF ¶ 4.) Ms. Garcia worked for the BIE for over 41 years before her retirement in 2017. (*Id.*) Rose Marie Davis, the Associate Deputy Director for Tribally Controlled Schools since February 2017, was Plaintiff's second-level supervisor who supervised staff that fell under tribally controlled schools, including Ms. Garcia. (Def.'s UF ¶¶ 5, 7.) Ms. Davis is Native American and at the time in question was 64 years of age. (Def.'s UF ¶ 8.) Ms. Bitsoi was the only Native Language and Culture Specialist under Ms. Garcia and there were no other similar positions to that position. (Def.'s UF ¶ 6.)

On Ms. Bitsoi's first day of employment, she was provided with an office from which to work. (Murphy Aff. ¶ 24, ECF No. 31-10.) Ms. Garcia was not present at the office on Ms. Bitsoi's first day because she was on travel. (*See* Pl.'s Resp. ¶ 23, ECF No. 37; Murphy Aff. ¶ 21, ECF No. 31-10.) Plaintiff was not assisted with the computer and had to figure out the computer on her own. (Bitsoi Aff. ¶¶ 3-4, ECF No. 37-1.) Plaintiff did not receive a formal orientation; instead, she had to wait for Human Resources ("HR") and received no help from them. (*See* Bitsoi Aff. ¶ 6, ECF No. 37-1.) She was never introduced to staff. (Bitsoi Aff. ¶ 15, ECF No. 37-1.) Plaintiff did not have any leave available that she could use her first week of employment because the position with the agency was her first federal job. (Def.'s UF ¶ 9.)

During her employment, several co-workers "made derogatory comments and insults about her race, Navajo." (Bitsoi Aff. ¶ 5, ECF No. 37-1.) Ms. Bitsoi "reported the hostile work

2

environment" to HR. (*Id.* ¶ 7.)² Ms. Davis was not aware that Plaintiff had engaged in EEO activity prior to Ms. Bitsoi filing the complaint from which this case arises. (Def.'s UF ¶ 15.) Nor was Ms. Murphy aware of any EEO activity Plaintiff was engaged in. (Def.'s UF ¶ 20.)

Jack Edmo, Jr., was a BIE Education Specialist (School Board), GS-13, who worked at the Albuquerque Resource Center and traveled to provide training to school board members. (Def.'s UF ¶ 33.) Mr. Edmo, a member of the Blackfeet Tribe, worked for the BIE for many years. (Def.'s UF ¶ 35.) Mr. Edmo "made derogatory comments" to Ms. Bitsoi. (Bitsoi Aff. ¶ 8, ECF No. 37-1.)

When another unit moved into the BIE building, GS-13 Education Specialists had to move from offices to cubicles. (*See* Murphy Aff. ¶ 33, ECF No. 31-10; Tsosie Aff. ¶¶ 19-20, ECF No. 31-12.) Mr. Edmo moved Ms. Bistoi to a cubicle. (Bitsoi Aff. ¶ 8, ECF No. 37-1.)

Sarah Murphy, a Navajo woman, was a BIE Program Support Assistant, G-7, in Albuquerque who was supervised by Ms. Garcia from May 2015 until December 2017. (Def.'s UF ¶¶ 18-19.) At the time of the events, she was 41 years old. (Def.'s UF ¶ 19.) Ms. Murphy constantly complained about Ms. Bitsoi to Ms. Garcia. (Bitsoi Aff. ¶ 16, ECF No. 37-1.)

Ms. Davis met Plaintiff once when she came to Minneapolis for a meeting in March 2017. (*See* Def.'s UF ¶ 11; Davis Aff. ¶¶ 47-48, ECF No. 31-6.) Ms. Bitsoi gave a presentation in Minneapolis that she was going to give to another audience, and those present advised her on whether the material was in line with agency goals and beliefs. (*See* Davis Aff. ¶ 48, ECF No. 31-6.) Joel Longie, an Education Program Administrator for the Minneapolis area, told Ms. Bitsoi that her presentation was too focused on Navajo culture. (Def.'s UF ¶ 13; Bitsoi Aff. ¶ 14, ECF No. 37-1.)

---

² In her affidavit, Plaintiff provides no dates, does not say who made the racial comments, and gave no other specifics as to the nature of the comments. For the reasons discussed *infra*, the Court cannot rely on such a conclusory assertion given the lack of factual detail. Similarly, Ms. Bitsoi did not give a date or otherwise explain or submit evidence of the details of what she reported to HR.

In or around April 2017, someone left a derogatory note on Ms. Bitsoi's truck. (*See* Bitsoi Aff. ¶ 12, ECF No. 37-1; Garcia Dep. 24:16-20, ECF No. 31-5; April 28, 2017, email, ECF No. 31-14.) The note had a cartoon drawing of a turtle that said: "Many three year olds have trouble staying within the lines. Maybe if you practice coloring this turtle, it will help with your parking. You are not special! Move far away from the front if you need 2 spaces!" (Def.'s Reply, Ex. 1, ECF No. 38-1.) Ms. Bitsoi reported the note to Ms. Garcia, who in turn reported it to her supervisor and the security officer. (*See* Garcia Dep. 24:16-20, ECF No. 31-5.)

Ms. Garcia denied Ms. Bitsoi leave. (Bitsoi Aff. ¶ 9, ECF No. 37-1.)[3] Ms. Garcia "was not around 80% of the time" and "made derogatory remarks" to Ms. Bitsoi. (*Id.*)[4] At some point, Ms. Garcia told her, "I didn't choose you for this position." (*Id.* ¶ 11.)

On May 11, 2017, Ms. Garcia issued Ms. Bitsoi a letter notifying her of the termination of her employment, effective May 27, 2017. (*See* Def.'s Ex. 16, ECF No. 31-16; Bitsoi Aff. ¶ 13, ECF No. 37-1.) As reasons for her firing, Ms. Garcia stated in the letter:

> As a result of my review into your ability to satisfactorily meet the requirements of your position, it is my determination that you have not been able to meet said requirements. You are being terminated for failure to carry out the assignments of your position. Specifically, you have not performed onsite visits to area Grant/Pueblo schools and/or provided resources that could have been used by Grant/Pueblo schools in this region and developed a Native Language Assessment that could be used by Grant/Pueblo schools to further their Native Language, History and Culture Curriculum.
>
> As a[n] Education Program Specialist, you are expected to complete work assignments in a timely manner. You have not done so. Therefore, it has become necessary to terminate your employment….

---

[3] Ms. Bitsoi's assertion is without additional detail. It is unclear from the record when, how often, and under what circumstances the leave denial occurred.

[4] Plaintiff avers that Ms. Garcia and Ms. Davis discriminated against her. (Bitsoi Aff. ¶¶ 9-10, ECF No. 37-1). This allegation, however, is conclusory and without specific factual support. For the reasons given herein, the Court will not rely on it as a fact. Instead, the Court in its analysis will determine whether the non-conclusory facts supported by evidence are sufficient to meet the elements of the legal causes of action.

(Defs.' Ex. 16, ECF No. 31-16.)

On August 22, 2017, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint for discrimination and hostile work environment because of her race/color, sex, national origin, age, and in retaliation for reporting discrimination and harassment to her supervisors, Ms. Garcia and Ms. Davis. (*See* Def.'s Ex. 1, ECF No. 31-1 at 1.) Plaintiff filed suit on March 1, 2021, against the Secretary of the United States Department of Interior, who is now Deb Haaland ("Defendant"), for race and color discrimination and hostile work environment in violation of Title VII (Counts I and II, respectively), age discrimination in violation of the ADEA (Count III), and retaliation in violation of Title VII for opposing discriminatory practices in the workplace (Count IV).

## II.  STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must "come forward with specific facts showing" that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).  Only disputes of fact that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless

there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

### III. LEGAL ANALYSIS

Title VII prohibits an employer from discriminating against any person with respect to her "compensation, terms, conditions, or privileges of employment, because of such individual's" race or color. 42 U.S.C. § 2000e–2(a)(1). Under the ADEA it is illegal for an employer to discharge or otherwise discriminate against any individual who is at least 40 years of age "because of such individual's age." 29 U.S.C. § 623(a)(1) and § 631(a). Title VII and the ADEA prohibit subjecting an employee to a hostile work environment because of their race, color, or age. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986); *Howell v. New Mexico Dept. of Aging & Long Term Servs.*, 398 F. App'x 355, 359 (10th Cir. Oct. 12, 2010).

According to Defendant, the only employment action that amounts to an adverse action in this case is the termination of Plaintiff's employment and Plaintiff does not have any evidence that she was fired due to unlawful discrimination or retaliation. Additionally, Defendant contends that Plaintiff did not identify any similarly situated individuals who were treated differently, and that Plaintiff cannot show that Defendant's legitimate, non-discriminatory reasons for her termination were pretextual. As for her hostile work environment claim, Defendant asserts that Plaintiff cannot establish that the alleged conduct was so severe that it altered the terms or conditions of her employment or that any action stemmed from unlawful animus.

**A.      Hostile work environment**

To state a hostile work environment claim based on race or age discrimination, the plaintiff must show under the totality of the circumstances that (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was

racial or age-based or stemmed from racial or age animus. *See Witt v. Roadway Exp.*, 136 F.3d 1424, 1432 (10th Cir. 1998). A plaintiff must show that the work environment was both objectively and subjectively hostile or abusive. *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012). A court should consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

Plaintiff contends the evidence shows that she faced discriminatory and derogatory comments the first day she started, and that several co-workers made derogatory remarks about Plaintiff's race. She relies on the following additional facts to show an abusive work environment: (i) Ms. Garcia was gone 80% of the time, denied her leave, and told her she did not choose Ms. Bitsoi for the position; (ii) Mr. Edno made derogatory comments about her race and moved her to a cubicle; (iii) HR made her wait to do her orientation and she had to figure out the computer system by herself; and (iv) co-workers left a nasty note on her truck. Because these actions occurred within the five months of her employment, Plaintiff contends she has shown pervasive and severe harassment.

Turning first to the alleged derogatory racial comments, the Court may only consider facts, as distinguished from conclusory allegations, and it must construe them in the light most favorable to the plaintiff. *Witt*, 136 F.3d at 1431. *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) ("Plaintiff's general assertions of discrimination and retaliation, without any details whatsoever of events leading up to her termination, are insufficient to survive a motion to dismiss."). Plaintiff's assertions of racially derogatory statements are too conclusory to consider as facts. She avers that "[s]everal Co-workers made derogatory comments and insults about [her]

7

race, Navajo," but her allegation is devoid of any specificity. (*See* Bitsoi Aff. ¶ 5, ECF No. 37-1.) The Court does not know who made the comments, when the comments were made, what the comments were, or any context in which to evaluate the comments. Plaintiff further states that Mr. Edmo made derogatory comments, but she, again, does not say when the comment was made or what the comment was for the Court to evaluate whether a jury could reasonably construe the comment to be race-, color-, or age-based or severe enough to create a hostile work environment. Similarly, Plaintiff merely asserts that Ms. Garcia made derogatory remarks, and that Ms. Garcia and Ms. Davis discriminated against her, without enough specificity for a jury to evaluate whether their conduct was racially motivated or whether their comments created a sufficiently severe adverse workplace. The Court cannot rely on Ms. Bitsoi's conclusory assertions in her affidavit. *Cf. Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (concluding that plaintiff failed to present evidence showing he was terminated for discriminatory or retaliatory reasons where three affidavits he presented to show dissimilar treatment were merely conclusory and did not provide any factual bases for the inference that others were treated differently); *Burk v. K Mart Corp.*, 956 F.2d 213, 215 (10th Cir. 1991) (on summary judgment, non-moving party has obligation to come forward with specific facts or evidence, more than mere conclusory allegations).

Ms. Garcia's comment that she did not choose Ms. Bitsoi for the position does not suggest racial animus nor is it physically threatening or humiliating. The lone specific allegation of a negative comment tied to race was that Mr. Longie made a negative comment about Ms. Bitsoi's presentation that it was too focused on Navajo culture. That comment, alone, does not amount to a discriminatory negative comment against Ms. Bitsoi for being Navajo. The BIE provides services for numerous Native American tribes and Pueblos, and the comment came as feedback to Plaintiff

8

about whether her material was in line with agency goals and beliefs.

With respect to the additional facts concerning what occurred in the workplace, they are not sufficiently objectively severe or pervasive to constitute a hostile work environment. A hostile work environment claim requires more than disrespectful, rude, chilly, or otherwise disagreeable behavior. *See Samoza v. Univ. of Denver*, 513 F.3d 1206, 1217-18 (10th Cir. 2008). No jury could conclude that the complained of conduct by Ms. Bitsoi was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. Complaints by Ms. Sanchez, who was junior to Ms. Bitsoi, and Mr. Edmo moving her to a cubicle, are not objectively intimidating. *Cf. id.* (holding that conduct was not indicative of pervasively hostile work environment necessary to survive objective test of second prong of prima facie standard for retaliation claim where junior colleague was disrespectful, defensive, disregarding, uncooperative, rude, and disagreeable). Moreover, the evidence in the record shows that all Education Specialists moved to cubicles when another unit moved into the building. Ms. Bitsoi has not explained how Ms. Garcia's absence from the workplace 80% of the time created an abusive environment. Furthermore, the lack of computer assistance or an orientation, and the denial of leave do not create a hostile work environment under the circumstances presented. The record is devoid of sufficient context for the Court to conclude that these actions created an abusive work environment. For example, there is no context given for the denial of leave – whether Plaintiff had earned leave when it was denied, the frequency of denials, whether Ms. Garcia gave reasons for the denials, and whether Ms. Bitsoi was singled out, whereas other non-minority employees' leave requests were always granted. Nor is there enough evidence in the record for a reasonable jury to conclude that the lack of computer assistance rendered Plaintiff unable to do her duties and set her up to fail, or that other non-minority employees were given the computer assistance that was denied Plaintiff.

Finally, turning to the note left on Ms. Bitsoi's car, a jury could conclude it was rude and disrespectful. However, there is nothing in the record from which a juror could draw the conclusion that the note was placed on her car because of Ms. Bitsoi's race, color, or age. Although Plaintiff asserts that the note "had a derogatory reference to her Navajo heritage" (Pl.'s Resp. 4, ECF No. 37), the evidence does not establish how the note was derogatory to her Navajo heritage or why she subjectively believed it was. Rather, the note itself expressed its purpose – frustration with the vehicle taking up two parking spaces near the building. Plaintiff presented no other evidence from which a reasonable jury could infer a racial- or age-based animus based on the note.

In sum, the factual evidence in the record does not establish harassment that was pervasive or severe enough to alter the terms, conditions, or privilege of Plaintiff's employment, or that the harassment stemmed from racial-, color-, or age-based animus. Accordingly, Defendant is entitled to summary judgment on the hostile work environment claim. *Cf. Witt*, 136 F.3d at 1431 (holding that mere statement in affidavit that harassment began with, and was condoned by, the union representative and perpetuated by co-workers, was too conclusory to state claim of harassment by union representatives).

    **B.**    **Discrimination based on race, color, and/or age**

A plaintiff may survive summary judgment by proving a violation of Title VII or the ADEA either by direct or circumstantial evidence of discrimination. *See Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011); *Jones*, 617 F.3d at 1278 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). In the absence of direct evidence of discrimination, courts use a three-part burden-shifting framework for evaluating disparate treatment claims under Title VII and the ADEA. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Crowe*, 649 F.3d at 1194. To establish a prima facie case of race discrimination, a plaintiff must show that

(1) she is a member of a racial minority, (2) she suffered an adverse employment action, and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Similarly, to establish a prima facie case for age discrimination in a termination case, the plaintiff must prove that she was "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). This burden is "not onerous." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (quoting *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. *Adamson*, 514 F.3d at 1145. If the defendant does so, the plaintiff must either show that her race, color, or age was a determinative factor in the defendant's employment decision or show that the defendant's explanation for its action was merely pretext. *Id.*

To constitute an adverse action, "the employer's conduct must be 'materially adverse' to the employee's job status." *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003). Adverse employment actions include acts that constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998)). The Tenth Circuit liberally interprets the adverse action prong, and courts must examine the unique factors relevant to each case. *Id.* Mere inconveniences or alterations of job responsibilities are not sufficient. *Id.*

Here, the only adverse action that Plaintiff has established is her termination from

employment. Neither the lack of an orientation, denial of leave when she had just begun work, nor moving her to a cubicle along with all other Education Specialists amounts to a significant change in employment status. *Cf. Heno v. Sprint/United Management Co.*, 208 F.3d 847, 857-58 (10th Cir. 2000) (concluding that moving plaintiff's desk, monitoring her calls, being chilly towards her, and suggesting she might do better in a different department did not affect her employment status, and thus, did not amount to adverse employment action); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532-33 (10th Cir. 1998) (concluding that transfer to another school, even though it increased her commute time, and unsubstantiated oral reprimands and unnecessary derogatory comments did not amount to adverse action absent evidence that they had some impact on the employee's employment status, and thus, plaintiff failed to establish prima facie case of discrimination). Nor do her allegations of co-worker hostility amount to conduct that is sufficiently severe to constitute an adverse action. *See Dick*, 397 F.3d at 1269 (explaining that coworker hostility may constitute adverse action "if it is sufficiently severe").

Plaintiff argues that she has presented direct evidence of race discrimination, but the Court disagrees. "Direct evidence demonstrates on its face that the employment termination was discriminatory." *Adamson*, 514 F.3d at 1145. There is no such evidence in the record. Her allegations of race-based comments are too conclusory to rely upon, and she has no direct evidence that Ms. Garcia fired her because of her race, color, or age. The Court will therefore analyze her claims using the *McDonell Douglas* framework.

It is undisputed that termination of Plaintiff's employment is an adverse action, and that Plaintiff is a member of a racial minority and is over the age of 40. She has therefore satisfied the first two elements necessary to establish a prima facie case of discrimination based on race, color, and age. The Court will thus turn to the third element – whether her termination of employment

occurred under circumstances giving rise to an inference of discrimination.

Ordinarily, a plaintiff can satisfy the third prong by showing that the employer treated similarly situated employees more favorably, but courts must be sensitive to the myriad ways a plaintiff may prove the inference. *See Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). Plaintiff attempts to establish this prong in a few ways. First, she relies on derogatory comments based on her race. As discussed above, however, Plaintiff's evidence about derogatory comments is conclusory and lacking in all the necessary factual detail to evaluate her claims. The couple of comments alleged in some detail – that Ms. Garcia said she didn't choose Ms. Bitsoi for the position and that Mr. Longie commented that Ms. Bitsoi's presentation was too focused on Navajo culture – do not reveal any racial or age-based animus causing her termination of employment. Notably, both Ms. Bitsoi's supervisors were Native Americans who were both also well over 40 years of age.

Next, Plaintiff suggests that she was treated differently from Mr. Edmo. "A plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant—i.e., that the employees were similarly situated." *Id.* at 1182. Mr. Edmo worked for the BIE for years, and Plaintiff did not submit evidence to indicate he held the same position, had the same duties, and was treated differently from Ms. Bitsoi based on similar conduct. She thus failed to show that any comparison with Mr. Edmo is legally relevant.

Nor has Plaintiff presented any evidence that Defendant replaced her with a person who was younger or that her position remained open after her discharge or was filled by a non-minority. Of significance, Plaintiff was fired approximately five months after she was hired, and thus, she was of essentially the same age when she was hired for the position as when she was fired from

13

the position, a situation that does not suggest age-based animus. Accordingly, Plaintiff failed to set forth enough non-conclusory facts, construed in her favor, to meet her burden of establishing that she was fired under circumstances giving rise to an inference of discrimination based on race, color, or age.

Moreover, even if Plaintiff set forth enough facts to establish a prima facie inference of discrimination, Defendant articulated a non-discriminatory reason for her termination of employment. According to Ms. Garcia's Notice of Termination letter, Ms. Garcia fired Plaintiff during her probationary period for failing to complete work assignments in a timely manner and for failing to carry out the assignments required of her position, specifically failing to perform onsite visits to Grant/Pueblo schools, failing to provide resources for those schools, and failing to develop a Native Language Assessment for those schools. (*See* Def.'s Ex. 16, ECF No. 31-16.) Defendant thus satisfied the burden to explain the actions against the plaintiff in terms that are not facially prohibited by Title VII. *See Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).

When the defendant meets her burden of coming forward with a legitimate, non-discriminatory rationale for the adverse employment action, the plaintiff must show that the defendant's proffered rationale is pretextual. *Crowe*, 649 F.3d at 1195. Pretext can be shown through evidence of weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered reasons that a reasonable jury could rationally find to be unworthy of credence; through direct evidence that the proffered reason is false; through evidence that the employer acted contrary to a policy or practice when making the adverse employment decision; or through evidence that plaintiff was treated differently from similarly situated employees. *See id.* at 1196; *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). The court does "not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry

is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007). To survive summary judgment, the plaintiff must come forward with evidence that would persuade a reasonable jury that the defendant's proffered reason was merely pretext for race, color, or age discrimination. *See Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1143–44 (10th Cir. 2009).

As evidence of pretext, Plaintiff asserts that she was not given the tools she needed to complete her assignments. That she was not assisted on her first day with the computer, had to figure out the computer system herself, and had to wait for HR to do the orientation do not show that her employer interfered with her ability to complete her assignments in a timely manner. Nor did Plaintiff submit evidence that she completed assignments on time or that her employer created conditions that made her unable to complete her job duties timely. Plaintiff's thin evidence requires too many leaps in logic to infer that her employer prevented her from completing her duties. Because Plaintiff's evidence is insufficient to meet her burden of showing her employer's reasons were pretextual, Defendant is entitled to summary judgment on Plaintiff's race, color, and age discrimination claims.

### C. Retaliation

"The general approach to Title VII suits set out in *McDonnell Douglas* is also applicable to retaliation claims." *Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir. 1993). "Title VII makes it unlawful to retaliate against an employee for opposing practices made unlawful by the statute." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 924-25 (10th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)). A plaintiff may establish a Title VII retaliation claim through either direct evidence that retaliation played a motivating part in the adverse employment decision or through the burden-shifting framework of *McDonnell Douglas*. *Id.* at 925. To make a prima facie case of retaliation,

a plaintiff must show: (1) she engaged in protected opposition to discrimination; (2) she subsequently suffered adverse action by the employer; and (3) there was a causal connection between the protected activity and the materially adverse action. *See id*.

As discussed above, the only adverse action established in this case is the termination of Plaintiff's employment, which satisfies the second prong of the prima facie test. Defendant argues, however, that Plaintiff has not met her burden of producing evidence demonstrating that she engaged in protected activity or that a causal connection existed between her alleged protected activity and any alleged materially adverse action.

Turning to the first prong of the prima facie case, when "an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Hansen*, 844 F.3d at 926 (internal quotations omitted). Plaintiff averred in her affidavit that she "reported the hostile work environment to Human Resources." (Bitsoi Aff. ¶ 7, ECF No. 37-1.) Again, this assertion is devoid of factual detail necessary to evaluate Plaintiff's claim. She does not say when she made the report or the contents of what she reported. Reporting a hostile work environment is not enough if she did not report a race-, color-, or age-based hostility in the workplace. Without more detail, a reasonable jury could not conclude that Defendant understood that Ms. Bitsoi's report of a hostile work environment constituted protected activity under Title VII or the ADEA.[5]

Even if the Court inferred that the conclusory assertion that she reported the hostile work environment was enough to satisfy the first prong of Plaintiff's prima facie case, Plaintiff has not

---

[5] Defendant provided the October 12, 2017 EEO letter accepting certain acts for investigation, one of which was based on Ms. Bitsoi's allegation that on March 2, 2017, she reported several incidents of harassment to Ms. Garcia. (*See* Def.'s Ex. 1, ECF No. 31-1.) It is not clear if this is the same report to which Ms. Bitsoi refers in her affidavit, which says she complained to HR. Even if the Court considered this allegation, it also lacks a reference to race-, color-, or age-based harassment.

shown sufficient evidence of a causal connection between the report and her termination of employment to survive summary judgment. To prove Title VII retaliation, a plaintiff must show but-for causation, in other words, that the unlawful retaliation would not have occurred in the absence of unlawful action by the employer. *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013). Even if the Court considered that Plaintiff's evidence met her prima facie burden, as explained *supra*, Defendant met her burden of producing a legitimate, non-retaliatory reason for terminating Plaintiff's employment, and Ms. Bitsoi's evidence is not sufficient to indicate pretext. *See Bolton v. Sprint/United Management Co.*, 220 F.App'x 761, 767 (10th Cir. Mar. 6, 2007) (unpublished) (assuming for purpose of appeal that plaintiff met non-onerous prima facie burden and determining that none of evidence created genuine issue of material fact that defendant's reason for terminating plaintiff's employment was pretextual). Any temporal proximity between her complaints and her firing is alone insufficient to establish pretext. *Cf. Annett v. University of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) ("close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment"). Defendant is therefore entitled to summary judgment on Plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Summary Judgment* (**ECF No. 31**) is **GRANTED** and all Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

_____
SENIOR UNITED STATES DISTRICT JUDGE